**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Graciela Espinoza,<br><br>  Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of   Social Security,<br><br>  Defendant. | No. CIV 12-189-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security.  The court has jurisdiction pursuant to 42 U.S.C. §1383(c)(3).

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 13)

The court finds the final decision of the Commissioner is supported by substantial evidence and is free from legal error.


PROCEDURAL HISTORY

In September of 2007, Espinoza filed an application for Supplemental Security Income benefits alleging disability due to panic attacks.  (Tr. 96, 105)  Her claim was denied initially and upon reconsideration. (Tr. 52-55, 46-49)

Espinoza requested review and appeared without counsel at a hearing before Administrative Law Judge (ALJ) Milan Dostal on September 9, 2009.  (Tr. 291-293)  In his decision, dated January 26,  2010, the ALJ found Espinoza was not disabled.  (Tr. 16-23)

Espinoza appealed and submitted additional exhibits, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 3-6); *see* 20 C.F.R. § 416.1481

Espinoza subsequently filed this action appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). (Doc. 1) She argues the ALJ erred at step three of the disability determination, failed to properly credit her subjective testimony of disability, failed to properly credit the opinion of her niece; and failed at step five to properly describe her impairments in his hypothetical to the vocational expert. (Doc. 40) In her response, the Commissioner argues generally that the decision of the ALJ was supported by substantial evidence and is free from legal error. (Doc. 43) Espinoza did not file a reply.

Claimant's Work History and Medical History

Espinoza was 42 years old when she appeared at her hearing before the ALJ. (Tr. 297) She has a seventh grade education. *Id.* She has never worked. *Id.* At the hearing, she explained she cannot work because "I get anxiety that I can't be around people." (Tr. 301)

Espinoza traces her anxiety to 2002 when her sister died and she took custody of her sister's children. (Tr. 124) Since that time, she has received psychological treatment at La Frontera for depression and anxiety. (Tr. 275)

In May of 2003, Espinoza was evaluated by Bruce Roberts, M.D., at La Frontera Center. (Tr. 192) Roberts opined that Espinoza was "suffering from her first episode of major depression as a result of the ongoing stresses associated with caring for her deceased sister's five children." (Tr. 193) "She is also experiencing fairly severe anxiety with frequent panic attacks." *Id.* He diagnosed: Axis I, major depression, single episode, severe; panic disorder; Axis II, deferred; Axis III, hypertension; GERD; Axis IV, severe psychosocial stressors; Axis V, current GAF (Global Assessment of Functioning) of 50. (Tr. 194) Roberts prescribed Paxil in addition to the Klonopin she was taking for anxiety. *Id.*

In March of 2008, Espinoza was examined by state agency consulting psychologist, Noelle Rohen, Ph.D. (Tr. 124) Rohen diagnosed generalized anxiety disorder, panic disorder

1 with agoraphobia, and dysthymic disorder. (Tr. 126) She explained, "Ms. Espinoza presents
2 with history of mild depression and reportedly severe anxiety with agoraphobia." *Id*. "She
3 asserts she has not left her house unaccompanied since 2002." *Id*. "If her self-report of
4 symptom severity is accurate, she would be expected to have difficulty attending a job regularly,
5 and concentrating adequately once she arrived." *Id*.

6 Rohen completed a Psychological/Psychiatric Medical Source Statement. (Tr. 127) She
7 found Espinoza's understanding and memory mildly impaired. *Id*. She found her
8 concentration and persistence adequate for "simple tasks for a couple hours at a time." *Id*. She
9 further opined Espinoza "would do best in a position in which social interaction was limited."
10 *Id*. She cautioned, however, that "[e]veryday difficulties appear to make her vomit" and "[s]he
11 appears easily stressed." *Id*.

12 In April of 2008, non-examining state agency psychologist, Janine Foster-Valdez, Ph.
13 D., reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 36,
14 110-122). She assessed affective disorder (dysthymic disorder) and anxiety-related disorder
15 (generalized anxiety disorder and panic disorder with agoraphobia). *Id.* She opined Espinoza
16 was moderately limited in "maintaining social functioning" and mildly limited in activities of
17 daily living and "maintaining concentration, persistence, or pace." *Id*. She noted no episodes
18 of decompensation of extended duration. (Tr. 120).

19 Foster-Valdez completed a Mental Residual Functional Capacity Assessment. (Tr. 106-
20 108). She found Espinoza moderately limited in her "ability to understand and remember
21 detailed instructions," "ability to carry out detailed instructions," "ability to work in
22 coordination with . . . others," "ability to complete a normal work week without interruptions,"
23 "ability to interact appropriately with the general public," "ability to get along with coworkers,"
24 "ability to travel in unfamiliar places," and "ability to set realistic goals." *Id*. She further
25 opined Espinoza was "able to understand, remember and carry out simple instructions," "able
26 to make simple work related decisions,"able to "work with and around others," and able to "deal
27 with changes in a routine work setting." *Id*.

28

Eugene Campbell reviewed the medical record for the disability determination service and affirmed Foster-Valdez's opinion in July of 2008. (Tr. 34, 226)

In August of 2008, Espinoza was examined by Jerome Roghbaum, M.D., for the disability determination services. (Tr. 129-131) His diagnostic impression was as follows: anxiety/panic attacks, hypertension, and morbid obesity. (Tr. 131) Roghbaum completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 132) He opined Espinoza has no physical limitations. *Id.*

Espinoza appeared without counsel at a hearing before Administrative Law Judge (ALJ) Milan Dostal on September 9, 2009. (Tr. 291-293) She explained she has "panic attacks and . . . social phobia." (Tr. 298) She stated she cannot work because, "I get anxiety that I can't be around people." (Tr. 301)

She currently lives with her daughter, nephew, uncle, and boyfriend. (Tr. 301) None of them work; they are all disabled. (Tr. 301) Around the house, Espinoza cleans, washes dishes, and makes some meals. (Tr. 301) She does not drive. (Tr. 302) She has no hobbies, but she watches television for an hour or two in the evening. (Tr. 303) When she leaves the house to go shopping, she always goes with her niece. (Tr. 305)

In October of 2011, Blanca Reina, a licensed professional counselor, completed a Mental Residual Functional Capacity (RFC) Assessment. (Tr. 288) She found Espinoza markedly limited in 18 separate functional categories in the areas of understanding and memory, concentration and persistence, social interaction, and adaptation. (Tr. 288-289) She opined Espinoza would be unable to work more than five days per month due to mental illness. (Tr. 289)

### CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and

benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*. Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

The ALJ's Findings

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

1    At step one of the disability analysis, the ALJ found Espinoza "has not engaged in
2 substantial gainful activity since September 6, 2007, the application date . . . ." (Tr. 18). At
3 step two, he found Espinoza has severe impairments: "obesity, generalized anxiety disorder,
4 panic disorder with agoraphobia and dysthymic disorder." *Id.* At step three, the ALJ found
5 Espinoza's impairments did not meet or equal the criteria for any impairment found in the
6 Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.*

7    The ALJ then analyzed Espinoza's residual functional capacity (RFC). (Tr. 19) He
8 found she "has the residual functional capacity to perform less than the full range of light work
9 as defined in 20 C.F.R. 416.967(b)." *Id.* "Claimant is able to lift/carry 20 pounds occasionally,
10 up to 10 pounds frequently and must avoid exposure to unprotected heights and hazardous
11 machinery due to obesity." *Id*. "Claimant is moderately limited in her ability to comprehend,
12 remember and implement complex instructions, but is unlimited in her ability to perform simple
13 tasks provided there is only a moderate level of contact with the public and moderate level of
14 stress." (Tr. 20)

15    At step four, the ALJ found Espinoza has no past relevant work. (Tr. 22) At step five,
16 relying on the testimony of the vocational expert, the ALJ found Espinoza could work as a
17 janitor/cleaner or as a hand packager. (Tr. 23) Accordingly, he found Espinoza was not under
18 a disability since September 6, 2007. *Id*.

## STANDARD OF REVIEW

21    An individual is entitled to disability benefits if he or she demonstrates, through
22 medically acceptable clinical or laboratory standards, an inability to engage in substantial
23 gainful activity due to a physical or mental impairment that can be expected to last for a
24 continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A]
25 claimant will be found disabled only if the impairment is so severe that, considering age,
26 education, and work experience, that person cannot engage in any other kind of substantial
27 gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.
28 1993).

1　　　The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
2  1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is
3  not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).
4  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept
5  as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a
6  preponderance." *Id.*

7　　　"Where evidence is susceptible to more than one rational interpretation, the ALJ's
8  decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider
9  the entire record as a whole and may not affirm simply by isolating a specific quantum of
10 supporting evidence." *Id.*

11　　　In evaluating evidence to determine whether a claimant is disabled, the opinion of a
12 treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
13 1993). The ALJ may reject a treating physician's uncontradicted opinion only if she sets forth
14 clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).
15 If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that
16 opinion only if she provides specific and legitimate reasons supported by substantial evidence
17 in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as
18 to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez
19 v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

20　　　"The opinion of an examining physician is, in turn, entitled to greater weight than the
21 opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
22 "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
23 uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,
24 even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
25 that are supported by substantial evidence in the record." *Id*. at 830-31.

26　　　"Where medical reports are inconclusive, questions of credibility and resolution of
27 conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d
28 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is

1 less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

## DISCUSSION

Espinoza argues first that the ALJ erred when he found she was not disabled at step three of the disability determination. At step three, the ALJ must determine whether the claimant's impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993).

Specifically, Espinoza argues she meets listing 12.06 for anxiety related disorders. The listing reads as follows:

> In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> A. Medically documented findings of at least one of the following:
>
> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>
> a. Motor tension; or
>
> b. Autonomic hyperactivity; or

1       c. Apprehensive expectation; or

2       d. Vigilance and scanning;

3       or

4-5       2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

6-7       3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

8       4. Recurrent obsessions or compulsions which are a source of marked distress; or

9-10       5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

11       AND

12       B. Resulting in at least two of the following:

13       1. Marked restriction of activities of daily living; or

14       2. Marked difficulties in maintaining social functioning; or

15       3. Marked difficulties in maintaining concentration, persistence, or pace; or

16       4. Repeated episodes of decompensation, each of extended duration.

17       OR

18       C. Resulting in complete inability to function independently outside the area of one's home.

19 20 CFR Pt. 404, Subpt. P, App. 1

20-26       The ALJ found that Espinoza's anxiety disorder did not meet or equal the listed impairment 12.06. He did not discuss whether Espinoza's disorder met the requirements of paragraph A. He did, however, explain that Espinoza did not meet the requirements of paragraphs B or C and accordingly, found she did not meet the listed impairment. (Tr. 18-19) Espinoza, on the other hand, argues that the ALJ's discussion of paragraph C was insufficient and that the evidence shows she does fulfil this requirement. The court does not agree.

A claimant fulfils the paragraph C requirement if she has anxiety "[r]esulting in complete inability to function independently outside the area of one's home." 20 CFR Pt. 404, Subpt. P, App. 1, listing 12.06. In his step three discussion, the ALJ stated simply that

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(Tr. 19) This explanation is too brief and conclusory to properly support the ALJ's decision at step three. Later in the decision, however, the ALJ explained more fully how he evaluated Espinoza's impairments and what information he relied upon to reach his conclusions.

Based on the medical record, the ALJ found Espinoza was "overwhelmed and stressed" in 2002 when she took custody of her sister's children and "began to have panic attacks." (Tr. 21) At the time, she was "given a GAF of 50 indicative of a moderate level of symptoms." *Id*. Since that time, however, she has received psychiatric medication and therapy. *Id*. Her GAF has risen to 60 "which is on the borderline between moderate and slight level of symptoms." *Id*.

In his evaluation of Espinoza's impairments, the ALJ gave "considerable weight" to the opinion of the examining psychologist, Rohen. Rohen found that while Espinoza displayed certain limitations in understanding and memory, "her concentration and persistence appeared adequate during the examination which was inconsistent with her subjective complaints of inability to leave the house." (Tr. 21) Also, "her social interaction was at all times during the interview appropriate which, again, was contrary to her subjective reports that she experiences extreme anxiety in social situations." (Tr. 21)

The ALJ's conclusion that Espinoza did not have a "complete inability to function independently" outside her home is supported by the treatment record and the observations of the examining psychologist. Accordingly, his conclusion that Espinoza did not satisfy the requirements of paragraph C and did not fulfil Listing 12.06 should be upheld.

Espinoza argues that evidence in the record supports her argument that she has a complete inability to function independently outside her home. This court, however, must

uphold the decision of the ALJ if it is supported by substantial evidence, and it is. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Espinoza argues next that the ALJ improperly discounted her subjective opinion of disability. The court finds the opinion of the ALJ should be upheld.

The ALJ found Espinoza "is not entirely credible as her allegations as to the intensity and limiting effects of her impairments are not corroborated by the medical evidence." (Tr. 22) He based his findings on the record of her daily activities, the observations of the examining medical consultant, and her treatment record. He found specifically that she "is able to maintain her household and care for her teenage child and nephew, attend treatment and attend the hearing without incident." (Tr. 22) "She is able to use public transportation, although she requires accompaniment." (Tr. 22) Moreover, "she was able to interact appropriately with the consultative examiner who did not detect the level of anxiety asserted by claimant." *Id.* The ALJ further observed that she has benefitted from her medication and her GAF score has risen from 50, when she began treatment, to 60 which "is on the borderline between moderate and slight level of symptoms." (Tr. 21); (Tr. 198) ("She finds the medication has been helpful in not feeling as depressed and anxious"); (Tr. 193) (GAF 50); (Tr. 195, 197, 201, 203, 205) (GAF 60) The ALJ has identified clear and convincing reasons for discounting Espinoza's subjective opinion of disability. The ALJ's evaluation of Espinoza's subjective testimony should be upheld.

Espinoza next argues the ALJ improperly discounted the opinion of her niece, Theresa Granado. In general, the testimony of a lay witness is "an important source of information about the clamant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." *Regennitter v. Commissioner*, 166 F.3d 1294, 1298 (9th Cir.1999).

In January of 2008, Theresa Granado, Espinoza's niece, submitted a Third Party Function Report. (Tr. 79) Granado explained that Espinoza works around the house washing dishes, sweeping, etc. (Tr. 79) She has no problem with her personal care or fixing her own meals. (Tr. 80, 81) She does, however, have difficulty with anxiety. Espinoza leaves home to go shopping every few days, but she is always accompanied by someone else. (Tr. 79, 82) Her

1 social life is limited. She watches TV but does not socialize with others outside the family. (Tr.
2 83) She also has some difficulty with memory and maintaining attention. (Tr. 84) She does
3 not handle stress well and gets nervous speaking with someone in authority such as a landlord
4 or policeman. (Tr. 85)

5 The ALJ considered Granado's statement but did not give it much weight because,
6 among other things, her opinions are "not consistent with the preponderance of the opinions and
7 observations by medical doctors in this case." (Tr. 22) This is an acceptable reason for
8 discounting a subjective third party opinion. *See, e.g., Pacheco v. Astrue*, 2012 WL 2065037,
9 5 (E.D.Cal. 2012).

10 Moreover, the court observes that Granado's observations of Espinoza's daily activities
11 are not necessarily contrary to the findings of the ALJ. Like Granado, the ALJ believes that
12 Espinoza suffers from anxiety and has difficulty with memory and social interactions. He
13 simply concludes that these difficulties are not disabling, and nothing in Granado's report
14 directly contradicts his opinion.

15 Finally, Espinoza argues the hypothetical offered by the ALJ to the vocational expert did
16 not accurately reflect Espinoza's functional limitations.

17 "At step five, the ALJ can call upon a vocational expert to testify as to: (1) what jobs the
18 claimant, given his or her residual functional capacity, would be able to do; and (2) the
19 availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th
20 Cir. 1999). "At the hearing, the ALJ poses hypothetical questions to the vocational expert that
21 set out all of the claimant's impairments for the vocational expert's consideration." *Id.*
22 (punctuation modified). "The ALJ's depiction of the claimant's disability must be accurate,
23 detailed, and supported by the medical record." *Id.* "The vocational expert then translates these
24 factual scenarios into realistic job market probabilities by testifying on the record to what kinds
25 of jobs the claimant still can perform and whether there is a sufficient number of those jobs
26 available in the claimant's region or in several other regions of the economy to support a finding
27 of not disabled." *Id.* (punctuation modified).

28

1    Here, the ALJ asked the vocational expert to consider a hypothetical person who "has
2 some depression or anxiety. . . some symptoms of panic attacks and . . . could only, only
3 moderately understand and remember complex detailed instructions. . . and also, she would be
4 able to work in and around the public and deal with changes in routine work settings on a
5 moderate level. . . [s]o there would be . . . a moderate effect of . . . working in and around the
6 public." (Tr. 309, 311) The vocational expert opined that if the claimant's psychiatric problems
7 had only a "moderate effect on her ability to do basic work activity" she could work as a janitor
8 cleaner or a hand packager. (Tr. 310-11)

9    In this case, the ALJ's hypothetical describing "moderate" impairments is supported by
10 the opinion of the non-examining state agency psychologist, Janine Foster-Valdez, Ph. D. (Tr.
11 36, 110-122). Foster-Valdez's opinion, in turn, was based on the observations of the state
12 agency consulting psychologist, Noelle Rohen, Ph.D. (Tr. 124) The ALJ was entitled to rely
13 on these medical opinions particularly where, as here, there are no contrary opinions by an
14 "acceptable medical source." *See* 20 C.F.R. 404.1513, 416.913. The ALJ's finding at step five
15 that Espinoza was not disabled is supported by substantial evidence. *See, e.g., Bayliss v.*
16 *Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (The ALJ's reliance on the testimony of a
17 vocational expert was proper where she was given a hypothetical that contained all the
18 limitations the ALJ found credible and supported by substantial evidence in the record.).

19    Espinoza argues that evidence in the medical record indicates that her impairments are
20 more severe than represented by the ALJ in his hypothetical. The ALJ, however, need not adopt
21 in his hypothetical all of the restrictions proposed by the claimant. "Rather, the ALJ is free to
22 accept or reject these restrictions as long as they are supported by substantial evidence."
23 *Magallanes v. Bowen*, 881, F.2d 747, 756-57 (9th Cir. 1989) (punctuation modified).

24    Here, the ALJ accepted the functional limitations proposed by the non-examining
25 physician rather than those proposed by the claimant. Substantial evidence supports his
26 findings. Accordingly, the court finds the ALJ's finding of non-disability is supported by
27 substantial evidence and is free from legal error. *See Bayliss v. Barnhart*, 427 F.3d 1211,
28 1217-18 (9th Cir. 2005) (The ALJ's reliance on the testimony of a vocational expert was proper

1  where she was given a hypothetical that contained all the limitations the ALJ found credible and
2  supported by substantial evidence in the record.).

4     IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED.
5  The Clerk of the Court is instructed to enter judgment accordingly and close this case.

7     DATED this 19th day of December, 2014.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge